IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IVAN D. FOSTER,<br>    Plaintiff,<br>      v.<br><br>PENN MILLERS INSURANCE<br>COMPANY, STEPHEN G. SWEET<br>ESQ., SWEET PASQUARELLI PC,<br>GREGORY D. WINTER<br>ESQ., WINTER & WINKLER PC,<br>THOMAS JEFFERSON HOSPITAL,<br>DELRAN BAGELS, ELMER<br>NALENVANKO, TROY DILEMMA and<br>JOHN, JANE, JACK, AND JAMES<br>DOES 1-100,<br>    Defendants. | | CIVIL NO. 09-492(NLH)(AMD)<br><br><br>**OPINION** |

**APPEARANCES:**

IVAN D. FOSTER
SOUTHERN STATE CORRECTIONAL FACILITY
P.O. BOX 150
DELMONT, NJ 08314

    Appearing *pro se*[1]

GREGORY D. WINTER
WINTER & WINKLER, ESQS.
ATTORNEYS AT LAW
554 SOUTH LIVINGSTON AVENUE
LIVINGSTON, NJ 07039

    On behalf of Defendants Gregory D. Winter, Esq., Winter &
    Winkler PC, Stephen G. Sweet Esq., Sweet Pasquarelli PC, and

---

[1]Plaintiff was released from the correctional facility on
June 10, 2010, but he has not provided the Court with his current
address.  (See Docket No. 40, Mail Returned as Undeliverable.)
Pursuant to L. Civ. R. 10.1(a), litigants have an affirmative
duty to inform the Court of changes to their address within five
days, or else be subjected to sanctions by the Court.  Because
plaintiff's case will be dismissed for substantive reasons, the
Court will not impose any other sanction on plaintiff regarding
his improper address.

Pennsylvania Millers Insurance Company

STEPHANIE MARIE HOHING
O'BRIEN & RYAN LLP
2250 HICKORY ROAD
SUITE 300
PLYMOUTH MEETING, PA 19462

On behalf of defendant Thomas Jefferson Hospital

**HILLMAN**, District Judge

This case concerns plaintiff's claims that his employer, his employer's workers' compensation insurer, several medical providers, and two attorneys and their law firms conspired to deny him the workers' compensation benefits he is entitled to for a work-related accident that occurred in January 2001. Presently before the Court are the motions of the properly-served defendants to dismiss plaintiff's claims against them. For the reasons expressed below, defendants' motions will be granted, and the remaining claims against the other defendants will be dismissed.

## BACKGROUND

Plaintiff, Ivan D. Foster, who is appearing *pro se*, was an employee of Delran Bagels, in Delran, New Jersey. He contends that on January 7, 2001, he sustained a back injury at work. In his complaint, plaintiff relates that he was denied workers' compensation benefits beyond the two weeks of temporary benefits provided by defendant, Pennsylvania Millers Insurance Company ("Penn Millers"), which was Delran Bagels' workers' compensation insurer. It appears that in his claim for workers' compensation

2

benefits, plaintiff contended that he suffered from a herniated disc and "Post Concussion Syndrome" as a result of the work injury, but that doctors retained by Penn Millers falsely determined that his numerous herniated discs were pre-existing conditions.

Because of the denial of benefits, plaintiff filed a claim with the New Jersey Division of Workers' Compensation.  Although it is unclear from plaintiff's complaint, it appears that plaintiff is claiming that contemporaneous with the workers' compensation claim proceedings, Penn Millers and its attorney, Stephen Sweet[2], filed unspecified criminal charges against him, which plaintiff claims was a conspiracy to extort a settlement from him.[3]  Plaintiff

---

[2]Defendant Gregory G. Winter reports that Mr. Sweet passed away in January 2010.  No formal "suggestion of death" or motion for a substitution for the proper party has been filed.  See Fed. R. Civ. P. 25(a) (explaining that the substitution of the deceased party must be made by motion, and that a motion can only be made after a "suggestion of death" has been filed with the Court).  Thus, the claims against Mr. Sweet must be dismissed on this basis, in addition to the reasons discussed below.  See Van Doren v. Van Doren, 17 A. 805, 807 (N.J. Ch. 1889) (stating that because the tortfeasor was dead, he could not "be proceeded against"); Darmanchev v. Roytshteyn, 234 F.R.D. 78, 79 (E.D. Pa. 2005) ("A dead man cannot be a party to an action, and any such attempted proceeding is completely void and of no effect.").

[3]Plaintiff's amended complaint suggests that the criminal charges concern plaintiff's alleged harassment of Penn Millers. (Amend. Compl. ¶ 98.)  Plaintiff's filings suggest that he failed to answer to those municipal court criminal charges, a warrant for his arrest was issued, and at some later point in time, he was arrested pursuant to that warrant and incarcerated for a week.  Plaintiff's filings also suggest that he was released because the charges were dropped.  Transcripts of the workers' compensation court proceedings present other criminal matters involving plaintiff, including a charge for purposefully filing a false claim for benefits.  (See, e.g., Def. Ex. E at 18-19.)

3

further claims that Penn Millers' subsequent attorney, Gregory Winter,[4] joined the conspiracy to extort a settlement from plaintiff, along with Penn Millers' medical providers and claims administrators, and two supervisory employees at Delran Bagels. Plaintiff alleges that defendants' conspiracy was in part due to his status as a disabled "Black American."

Because of the conspiracy perpetrated by all the defendants, plaintiff alleges that he is owed $150,000 in workers' compensation benefits, and not the $85,000 he settled for.  Plaintiff also claims that he is entitled to $150 million in punitive damages. Plaintiff brings his claims pursuant to 42 U.S.C. §§ 1983 and 1985(3), 18 U.S.C. §§ 1951 and 1961, and N.J.S.A. 34:15-1.

Defendants Gregory Winters and his law firm, Stephen Sweet and his law firm, Penn Millers, and Thomas Jefferson Hospital have moved to dismiss[5] plaintiff's claims against them.[6]  Plaintiff has

---

See, *infra*, note 11 for further discussion of plaintiff's criminal charges.

[4]It is unclear why Penn Millers changed representation, although plaintiff alleges it was part of the conspiracy against him.

[5]Penn Millers, along with the attorney and law firm defendants, first filed their collective motion to dismiss prior to plaintiff filing his amended complaint, which effectively mooted their motion.  These defendants filed a subsequent motion to dismiss in response to plaintiff's amended complaint.  Despite plaintiff's protestations, both he and defendants proceeded properly in this regard.

[6]It does not appear that any of the other defendants have been served with plaintiff's original or amended complaint, and

opposed defendants' motions.

## DISCUSSION

### A.   Subject Matter Jurisdiction

Even though plaintiff alleges several federal laws as a basis for this Court's jurisdiction, the only viable ones are 42 U.S.C. § 1985(3), which prohibits certain categories of conduct relating to two or more persons acting together in a conspiracy for a racial or class-based reason, and 18 U.S.C. § 1961, which provides a civil remedy for RICO violations.[7]  Thus, this Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

### B.   Motion to Dismiss Standard

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed.

---

plaintiff is out of time to do so.  See Fed. R. Civ. P. 4(m) (providing 120 days to serve the summons and complaint). Plaintiff's claims against these non-moving defendants fail for the same reasons as they fail against the moving defendants, Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (explaining a court's inherent authority to dismiss the action "provided that the complaint affords a sufficient basis for the court's action"), but they may also be dismissed for plaintiff's failure to timely effect service.

[7]With regard to plaintiff's other bases for jurisdiction: (1) jurisdiction is improper under 18 U.S.C. § 1951 (The Hobbs Act) because it is a criminal provision that plaintiff cannot prosecute himself; (2) section 1983 is unavailable to plaintiff, as none of the defendants are state actors; and (3) as discussed more fully below, this Court does not have jurisdiction to hear workers' compensation claims, see N.J.S.A. 34:15-49 ("The Division of Workers' Compensation shall have the exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter.").

R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal

6

. . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6).  First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do more than allege the plaintiff's entitlement to relief.  Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114

F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

### C.   Analysis

The crux of plaintiff's claims is that all of the defendants communicated through the mail and telephone wires to conspire on a plan to mislead the Workers' Compensation Division into denying his legitimate claim, and to otherwise force plaintiff to settle for an amount that was half of what he was owed.  Even accepting these allegations as true, plaintiff's claims are not viable.

8

The first two reasons why plaintiff's claims fail are based on well-established prudential principles.  First, plaintiff is effectively seeking to have an order of the New Jersey state court system vacated, which this Court is prohibited from doing.  Second, plaintiff is improperly seeking to relitigate issues which were raised, or should have been raised, in the state court proceedings.

On March 23, 2005, the workers' compensation judge approved a settlement entered into by plaintiff and the relevant defendants.[8] At that time, plaintiff agreed that he understood he was accepting a "lump sum" settlement, which precluded future payments of any kind.  (See Def. Ex. A at 16:9-24.)  "By three separate and distinct inquiries [plaintiff] acknowledged he voluntarily accepted the settlement and that it was final and could not be reopened."[9] (Workers' Compensation Court May 5, 2006 Opinion, Def. Ex. B at 7.)

---

[8]A prior judicial opinion or court proceeding transcript constitutes a public record of which a court may take judicial notice when considering a Rule 12(b)(6) motion to dismiss.  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  In such a situation, the judicial opinion or transcript may only be recognized for its contents, and not for the truth of the facts asserted in therein.  Id.  Thus, this Court will take judicial notice of the proceedings that occurred in the Workers' Compensation Division, but this Court makes no findings as to the substantive validity of the proceedings.

[9]It is important to note that plaintiff was represented by counsel when he settled his workers' compensation claim. (See Workers' Compensation Court May 5, 2006 Opinion,  Def. Ex. B.) Later, in his attempt to vacate the settlement, plaintiff claimed that his attorney did not properly advise him.  (See Def. Ex. C at 85:19-24.)  The workers' compensation court rejected plaintiff's contention.  (Def. Ex. B.)

A year later, plaintiff filed a motion to have the workers'
compensation court withdraw the settlement.  The application was
heard on April 11, 2006, another hearing was held on May 2, 2006,
plaintiff's motion was denied on May 5, 2006, and plaintiff's
motion for reconsideration was denied on June 22, 2006.  (See Def.
Ex. B, C, D, E.)  Plaintiff's recourse at that point was to file an
appeal within 45 days to the Appellate Division of the New Jersey
Superior Court.  See N.J. Ct. R. 2:2-3(a), 2:2-4.  It does not
appear that plaintiff filed an appeal, and three years later he
instead filed this case here.

To the extent that plaintiff's complaint can be construed as
seeking the reversal of the state court workers' compensation
orders through a finding that defendants conspired to defraud the
workers' compensation court, the Rooker-Feldman doctrine prohibits
this Court from maintaining subject matter jurisdiction over
plaintiff's request.  See Exxon Mobil Corp. v. Saudi Basic
Industries Corp., 544 U.S. 280, 291-92 (2005) (explaining that in
the Rooker and Feldman cases, plaintiffs in both cases, alleging
federal-question jurisdiction, called upon the district court to
overturn an injurious state-court judgment, but because § 1257, as
long interpreted, vests authority to review a state court's
judgment solely in the Supreme Court, the district courts in Rooker
and Feldman lacked subject-matter jurisdiction).

Furthermore, plaintiff is seeking relief for claims that

implicate abstention principles.  See, e.g., <u>Younger v. Harris</u>, 401 U.S. 37 (1971) (concerning the abstention doctrine that rests on a strong federal policy of noninterference with pending state judicial proceedings)[10]; <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) (providing that federal district courts may abstain from hearing cases and controversies that present "difficult questions of state law bearing on policy problems of substantial import whose importance transcends the result in the case then at bar," and under "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest").  It is not the place of this Court to interfere with New Jersey workers' compensation laws and decisions.  Thus, on these two bases alone, plaintiff's claims must be dismissed.

In addition to the Supreme Court precedential bar to plaintiff's claims, res judicata principles also appear to preclude plaintiff's claims.  The doctrine of res judicata "is often analyzed . . . to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion.'"  See <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 77 n.1 (1984).  "Issue preclusion

_____

[10]As discussed below, plaintiff had two options to further challenge the decision of the workers' compensation court.  This Court makes no finding on whether those options are currently viable so that the state matter may be considered "pending" for the <u>Younger</u> doctrine to be applicable.  This is the reason why <u>Colorado River</u> is an alternative, or perhaps even primary, basis for abstention.

refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." <u>Id.</u>  "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." <u>Id.</u>

In the state court proceedings, plaintiff raised numerous times his claims that a conspiracy was afoot to extort his acceptance of a settlement.  For example, in the hearing on plaintiff's motion to vacate the settlement, the court heard extensive testimony regarding plaintiff's conspiracy allegations involving plaintiff's employer, Penn Millers, and the attorneys involved in the case.  (Def. Ex. D at 7-8.)  The workers' compensation court also heard plaintiff's claims regarding how Penn Millers filed false criminal charges against him.[11]  Later, during

_____

[11]Although plaintiff's complaint alleges that Penn Millers filed false charges to extort a settlement, as noted above, it is unclear what charges were brought and the disposition of those charges.  The transcript of one of the workers' compensation hearings reveals that on September 2, 2005, plaintiff was sentenced to one year in county jail and one year of probation for pleading guilty to criminal trespass, downgraded from burglary and theft charges which were dropped, for stealing the computer from the company hired by Penn Millers to take plaintiff's medical examination.  (Def. Ex. C at 35-36.)  If these charges are the basis for a common law malicious prosecution claim, in addition to being barred on res judicata principles because they have already been considered by the workers' compensation court, they substantively fail as well.  <u>See</u> <u>LoBiondo v. Schwartz</u>, 970 A.2d 1007, 1022 (N.J. 2009) (explaining that to prove a claim for malicious prosecution of a criminal complaint, a plaintiff must establish: "(1) a criminal action was

the hearing concerning his motion for reconsideration of the denial of his motion to vacate the settlement, plaintiff testified that he contacted the New Jersey Attorney General's Office regarding "RICO implications," that a workers' compensation judge "fixed the case," that the workers' compensation court colludes with the insurance companies and "allows the insurance company to beat up on the little guy," and "[i]t seems [] when everybody gets tenure they become part of the team that does what the racket says."  (See, e.g., Def. Ex. E at 19:14-21, 21:4-18, 21-24, 26, 30, 33, 35-36, 43.)

Thus, the workers' compensation court considered, and rejected, all of these arguments--and the rest of plaintiff's claims and issues raised in his complaint--when it analysed whether

---

instituted by [the] defendant against [the] plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff," and that the absence of any one of these elements is fatal to the successful prosecution of the claim).

Plaintiff also references municipal court charges purportedly brought by Penn Millers for harassment, for which he did not appear when the case was transferred to New Brunswick, New Jersey.  Because he failed to appear, a warrant was issued for his arrest.  Plaintiff relates that he was arrested as a result of this warrant, incarcerated for a week, and then the charges were dropped by Penn Millers.  If this is the basis for his extortion claim, plaintiff had brought it before, and it was considered by, the workers' compensation court.  (See, e.g., Def. Ex. C at 78-79, "In reference to the settlement there had been pressure by charges being filed against me for harassing Penn Millers because I was calling trying to get treatment . . . .")

to vacate the settlement.[12]  Regardless of whether the workers'
compensation judge's decisions on these issue were right or wrong,
plaintiff's duplicative claims here are barred because they have
already been fully adjudicated.  Velasquez v. Franz, 589 A.2d 143
(N.J. 1991) ("Under the doctrine of res judicata, a cause of action
which has been finally determined between the parties on the merits
by a tribunal having jurisdiction cannot be re-litigated by those
parties in a new proceeding."); Taylor by Taylor v. Engelhard
Industries, 553 A.2d 361, 365 (N.J. Super. Ct. App. Div. 1989)
(citations omitted) ("When an issue of fact or law is actually
litigated and determined by a valid and final judgment, and the
determination is essential to the judgment, the determination is
conclusive in a subsequent action between the parties, whether on
the same or a different claim."); City of Hackensack v. Winner, 410

---

[12]When hearing plaintiff's motion for reconsideration, the
workers' compensation judge encouraged plaintiff to bring his
concerns to the proper authorities if he truly felt that there
was a conspiracy against him.  He stated,

> I say again, I do encourage you or someone to let the
> Attorney General's Fraud Division take a look at this entire
> case if you feel, for example, this court has been biased.
> I notice that your allegations of corruption against this
> judge and you calling me a racist all came after the
> decisions went in your favor.  The minute that I refused to
> set aside the Section 20 [settlement] is when you began
> sending your E-mails and that is when you began calling me
> corrupt, saying to this court that it was a racist, saying
> also that some of the others were equally guilty of that.  I
> will leave that to someone to take an entire look at.

(Def. Ex. E. at 30:8-23.)

A.2d 1146 (N.J. 1980) ("The principles of res judicata and
collateral estoppel are applicable to administrative hearings.").

To achieve the result plaintiff is seeking with his action
here, plaintiff had two proper paths.  First, as noted above,
plaintiff could have filed an appeal of the workers' compensation
court's final disposition of his claims with the New Jersey
Appellate Division.  See N.J. Ct. R. 2:2-3(a), 2:2-4.  Second,
plaintiff could have moved to reopen his workers' compensation case
within two years.  Taylor, 553 A.2d at 365 (citing N.J.S.A.
34:15-27, -58) ("Ordinarily, the doctrines of res judicata and
collateral estoppel do not preclude reopening a workers'
compensation judgment and increasing the compensable award.");
Milos v. Exxon Co., USA, 656 A.2d 1300, 1302 (N.J. Super. Ct. App.
Div. 1995) (citations omitted) ("In contrast to the absolute bar
that a final determination on the merits has in other fields, the
Workers Compensation Act (Act), N.J.S.A. 34:15-1 to -128, permits
an award to be reviewed and modified."); J.W. Ferguson Co. v.
Seaman, 197 A. 245 (N.J. 1938) (explaining that the purpose of the
review of a formal compensation award is to correct mistakes and
inaccuracies ordinarily inherent in, and incident to, the entering
of formal award).  Plaintiff, however, cannot institute a new
action in federal district court in an attempt to circumvent the
state court rules, or to relitigate issues that have already been
thoroughly considered by the state court.

Even if abstention and res judicata principles did not bar plaintiff's claims outright, a third reason warranting dismissal of this case is that plaintiff's attempt to lodge RICO claims against these defendants substantively fails.  In order to adequately plead a violation of RICO, a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and a pattern of racketeering activity requires at least two predicate acts of racketeering.  Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004) (citing Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985); 18 U.S.C. § 1961(5)).  These predicate acts of racketeering may include, inter alia, federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343.  See 18 U.S.C. § 1961(1).  The federal mail and wire fraud statutes prohibit the use of the mail or interstate wires for purposes of carrying out any scheme or artifice to defraud.  See 18 U.S.C. §§ 1341, 1343.  "'A scheme or artifice to defraud need not be fraudulent on its face, but must involve some sort of fraudulent misrepresentation or omission reasonably calculated to deceive persons of ordinary prudence and comprehension.'"  Lum, 361 F.3d at 223 (citation omitted).

The Third Circuit has instructed that where a plaintiff relies on mail and wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled

16

with specificity.  Id.  In order to satisfy Rule 9(b), a plaintiff must plead with particularity "the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  Id. at 223-24 (citation and quotations omitted).  A plaintiff may satisfy this requirement by pleading the "date, place or time" of the fraud, or through "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Id. at 224 (citation omitted).  A plaintiff must "also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  Id. (citations omitted).

In this case, plaintiff makes conclusory claims that over the course of about five years, his employer, its insurance carrier, the carrier's medical providers, and the lawyers representing the insurance carrier discussed plaintiff's workers' compensation case through telephone conversations and mail correspondence.  Plaintiff contends that these communications serve as the predicate acts for misrepresentations to the workers' compensation court.  Although the Court recognizes that *pro se* complaints are to be construed liberally, Estelle v. Gamble, 429 U.S. 97, 107 (1976), *pro se* litigants "must still plead the essential elements of [their] claim and [are] not excused from conforming to the standard rules of civil procedure," McNeil v. United States, 508 U.S. 106, 113

17

(1993).  For several reasons, these allegations are insufficient to state a RICO conspiracy claim.

First, communications between an employer, an insurer, medical providers, and an attorney regarding the defense of a workers' compensation claim cannot be held to be a "conspiracy."  If that were the case, then every workers' compensation defense would be a RICO violation.  Second, the attorney's representations to the court concerning his client's defense to the workers' compensation claim cannot be considered RICO-type misrepresentations.  The basis of a RICO claim is a party's fraudulent misrepresentation to the person claiming the RICO violation, and not to a third party.  <u>See</u> <u>Lum</u>, 361 F.3d at 224 (explaining that the plaintiffs' RICO claim was not properly pleaded because their allegations did not "indicate which defendant(s) made misrepresentations to which plaintiff(s)").

Additionally, any representations by an attorney to a court are governed by the court's ethics rules, and a party's concern over the statements made to a court by an attorney should be directed to that court, or to the proper attorney licensing authority.  <u>LoBiondo v. Schwartz</u>, 970 A.2d 1007, 1026 (N.J. 2009) ("Our principal means of regulating the behavior of attorneys are found in our Rules of Professional Conduct ( RPC ) and the disciplinary system that we use to enforce them. . . .  We have not hesitated to impose discipline upon attorneys whose behavior runs

18

afoul of these rules."). Moreover, any substantive challenge to a witness's testimony or other evidence is accomplished through the adversarial litigation process, and not through a separate cause of action attacking those assertions.

Overall, "the major purpose of RICO is to address the infiltration of legitimate business by organized crime." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1422 (3d Cir. 1991). Even taking as true plaintiff's claims regarding defendants' motives, RICO does not apply to the situation plaintiff has alleged here.[13]

## CONCLUSION

By filing this case, plaintiff is attempting to relitigate his workers' compensation case under the guise of a civil conspiracy.[14]

---

[13]To the extent that plaintiff is alleging claims of "extortion," New Jersey does not recognize a civil cause of action for extortion. Pegasus Blue Star Fund, LLC v. Canton Productions, Inc., 2009 WL 3246616, *2 (D.N.J. 2009) (citing Dello Russo v. Nagel, 817 A.2d 426 (N.J. Super. Ct. App. Div. 2003) (other citation omitted). Additionally, to the extent that plaintiff is alleging a claim for malicious prosecution pursuant to § 1983 for the criminal charges which plaintiff claims defendants facilitated, such a claim may only be advanced against the governmental official or entity that effected such charges. See Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

[14]Although plaintiff also makes a general allegation that the conspiracy was motivated by his race and disability, he does not plead any facts that show or infer that defendants acted out of animus toward his race or disability. Instead, plaintiff focuses his claims on his feeling that defendants did not want to pay him the money he was owed. The lack of any substantive allegations regarding race or disability discrimination causes any claims

19

Perhaps recognizing that he cannot directly contest the final judgment of the workers' compensation court in this Court, and that this Court cannot award him additional money he feels he is owed for his workplace injury, plaintiff has repackaged his issues with his workers' compensation claim into an alleged RICO conspiracy in an attempt to obtain the relief he was denied in the exhaustive state court proceedings.  All of the issues presented here, however, have already been considered during his workers' compensation proceedings, and they were rejected.  Not only did the workers' compensation court reject the presence of a conspiracy, it found that plaintiff voluntarily entered into the settlement and simply had a change of heart.  This Court cannot interfere with a state court judgment by revisiting issues fully and fairly litigated in the prior state court proceedings.  Accordingly, all of plaintiff's claims will be dismissed.  An appropriate Order will be entered.


Dated: July 22, 2010                     s/ Noel L. Hillman

At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

based on his race or disability that can be liberally construed from his complaint to fail.  Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (explaining that "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element).